UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | |
|---|---|
| **BRIAN A. DEKLE and JOHN RAMSAY,** * | |
| * | |
| Plaintiffs, * | |
| * | |
| vs.  * | Case No.: 1:15-CV-00069 |
| * | |
| **GLOBAL DIGITAL SOLUTIONS, INC.;** * | |
| **NORTH AMERICAN CUSTOM SPECIALTY** * | |
| **VEHICLES, INC.; and RICHARD J.** * | |
| **SULLIVAN,** * | |
| * | |
| Defendants. * | |

___

**FIRST AMENDED COMPLAINT**
___

Plaintiffs, pursuant to Rule 15(a)(1) *Fed. R. Civ. P.*,[1] amend their Complaint to assert additional causes of action and to add Richard J. Sullivan as an additional party Defendant.[2]

As amended, the Complaint reads as follows:

___

[1]This Amended Complaint is filed within twenty-one days of the filing of both the Notice of Removal (filed on February 9, 2015), and the Defendants' Motion to Dismiss (filed on February 16, 2015).

[2]District courts in this Circuit have construed McLellan v. Mississippi Power and Light Co., 526 F.2d 870 (5th Cir.1976), modified on other grounds, 545 F.2d 919 (5th Cir.1977), as not requiring leave to add a party when a complaint is amended as of right under Rule 15 (a). *See, e. g.,* Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc., 750 F.Supp. 487, 493 (M.D.Fla. 1990). Other federal courts have held that even when a complaint is amended as of right, the plaintiff must seek leave of court pursuant to Rule 21 to add parties. Accordingly, without waiving their position that Defendant Richard J. Sullivan is properly added pursuant to Rule 15 (a)(1), Plaintiffs have contemporaneously filed a Motion for Leave to add Richard J. Sullivan pursuant to Rule 21, *Fed.R. Civ. P.*

## PARTIES

1. Plaintiff Brian A. Dekle is a resident of Baldwin County, Alabama, and Plaintiff John Ramsay is a resident of Mobile County, Alabama.

2. Defendant Global Digital Solutions, Inc. ("GDSI"), is a publicly traded Delaware corporation with its principal place of business in Florida, and is the sole shareholder of Defendant North American Custom Specialty Vehicles, Inc. ("Defendant NACSV").

3. Defendant NACSV is a Delaware corporation formerly known as GDSI Acquisition Corporation and is the surviving entity from the merger of GDSI Acquisition Corporation and North American Custom Specialty Vehicles, L.L.C., an Alabama limited liability company (the "Original NACSV").

4. Defendant Richard J. Sullivan ("Sullivan") is, and was at all times pertinent hereto, an officer and/or director of Defendant GDSI and was in a position to, and did control, GDSI. Sullivan's residence is believed to be in Florida.

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of a different state than Defendants and because the value of the matter in controversy exceeds $75,000, and pursuant to 28 U.S.C. § 1331 as a result of the Rule 10b5 claim arising under the Securities Act of 1934.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims are based occurred in the Southern District of Alabama.

## SUBJECT MATTER

7. This lawsuit arises out of a transaction in which Plaintiffs sold their interest in Original NACSV to GDSI Acquisition Corporation in exchange for cash and GDSI stock. The transaction details are set forth in that certain Equity Purchase Agreement ("the Purchase Agreement") attached to this Amended Complaint as Exhibit "A". The Purchase Agreement required Defendant GDSI and Original NACSV, among other things, (a) to pay additional cash consideration upon the post-closing sale of certain assets ("the 3.3 (d)(i) Assets") (Section 3.3 (d)(i)); (b) to pay additional stock consideration based on the Company's post-closing performance; and (c) "to use reasonable [sic] commercial efforts to operate [Original NACSV] on a profitable basis and consistent [sic] with its historical practices" (Section 6.4). Defendants breached their obligations to pay the additional cash consideration ($406,000.00 is presently due Plaintiffs pursuant to Section 3.3 (d)(i), but Defendants GDSI and NACSV have disavowed that obligation and thus far refused to discharge it, despite having the funds to do so); to use commercially reasonable efforts to generate a profit (Defendants GDSI and NACSV have overspent funds in making a flashy video and purchasing an ocean-front condominium); and to operate the Company consistently with historical practices (Defendants GDSI and NACSV have changed the Company's longstanding practice of not requiring pre-payments/deposits for certain customers, resulting in cancelled or failed sales) and have forced out employees on whom the Company depends for profitability.

8. Further, to induce Plaintiffs to accept the issuance of GDSI stock as partial consideration for the sale, Defendants GDSI and Sullivan made false or misleading statements, or failed to state facts necessary to make their statements not misleading, with the intent to deceive Plaintiffs, causing them financial harm. At the time of the closing, the GDSI stock was trading for

$0.35 per share, but now, just over eight months later, the stock price has fallen to $0.04 per share (a decline of almost 90%), the reasonable inference being that GDSI's and Sullivan's misleading, fraudulent or other wrongful statements have been discovered by the market. These actionable misrepresentations are more particularly set forth in paragraph 12 below.

## STATEMENT OF THE CLAIM

9. As set out in further detail below, Plaintiffs claim that (a) Defendants GDSI and NACSV breached their contractual obligations as aforesaid and (b) Defendants GDSI and Sullivan, by virtue of their material misrepresentations in connection with the issuance of GDSI stock to Plaintiffs, violated the securities laws of the United States and the State of Alabama, respectively, the United States Securities Act of 1934 and *Code of Alabama* Section 8-6-19 (1975).

## FACTUAL ALLEGATIONS MATERIAL TO ALL COUNTS

10. Plaintiffs were the founders and only members of the Original NACSV. Original NACSV was in the business of designing and producing custom mobile command centers. Customers were principally law enforcement and military agencies. Plaintiff Dekle was the manager of the business and discharged those duties occasionally from the company's plant in Melbourne, Florida, occasionally from his home in Baldwin County, Alabama, and occasionally traveling throughout the United States and other countries to market, deliver, train, etc. in connection with mobile command centers. Since his terminal pancreatic cancer diagnosis in July of 2013, Plaintiff Dekle ran the business of the Original NACSV predominantly from Baldwin County, Alabama.

11. In 2014, GDSI and Sullivan became interested in purchasing Original NACSV. Plaintiff Dekle, due to his cancer battle, was often unable to travel and, therefore, negotiated with GDSI and Sullivan, via telephone and email, from Plaintiff's home in Baldwin County, Alabama.

12. Plaintiff Dekle, particularly given his health condition, wanted an all cash deal for the benefit of his family, but Defendants GDSI and Sullivan induced Plaintiffs to accept newly-issued GDSI stock as part consideration. Representations made by Defendants GDSI and Sullivan that Plaintiffs have since learned to be false include the following:

   (A) GDSI had struck deals to acquire companies in the business of law enforcement support, most specifically, Lawmen's Safety Supply of North Carolina, and Remington Outdoor Supply Company;

   (B) GDSI was building a turnkey conglomerate military and law enforcement support business that would initially include Original NACSV, Lawmen's Safety Supply, and Remington;[3]

   (C) GDSI had entered into an agreement to place on its board of directors a European businessman from a royal family with financial capital and connections able to facilitate construction of this conglomerate law enforcement support business;

   (D) The public announcement of the Director appointment mentioned in subparagraph (C) above would boost the stock price well above the $0.35 at which each share was being valued for purposes of the Purchase Agreement;

---

[3] Even as of the date of the filing of this Amended Complaint, the opening statement of GDSI's website touts GDSI's "acquisition and integration strategy [as] the linchpin to [its] goal of becoming a leading provider of defense technology-based solutions and systems to commercial customers, the U.S. military and foreign allies, and U.S. government civil agencies and friendly counterparts."

 (E) GDSI would fund NACSV's production so that operating capital would be a non-issue;

 (F) GDSI would fund NACSV's marketing, as well as specifically train and dedicate Ross Trevino, a newly-hired management employee, to develop and carry-out NACSV's business, as all parties expected that Plaintiff Dekle would continue to curtail his activities; and

 (G) GDSI would purchase a 56,000 square foot facility to enable NACSV to produce command centers at the volume that GDSI's marketing efforts would generate.

13. The representations identified in subparagraphs (A) through (G) above were false and made with the intent to deceive Plaintiffs to induce them to accept stock as partial satisfaction of the purchase price. At the time of the closing of the sale by Plaintiffs to GDSI Acquisition Corporation, Plaintiffs did not realize the fraudulent nature or falsity of these representations, and as a result, they accepted GDSI stock in reasonable reliance on these fraudulent statements.

14. On or about June 16, 2014, Plaintiffs met in Daphne, Alabama, and executed the Purchase Agreement, pursuant to which Plaintiffs sold their interests in Original NACSV to Defendant GDSI Acquisition Corporation (now known as Defendant NACSV). Defendant NACSV and Original NACSV guaranteed the performance of Defendant NACSV under the Purchase Agreement. Defendants delivered the executed Purchase Agreement and the initial GDSI stock certificates to Plaintiffs in Alabama; therefore, the final action necessary to complete the closing occurred in Alabama.

15. The Purchase Agreement required Defendant GDSI and Original NACSV, among other things, (a) to pay additional cash consideration upon the post-closing sale of certain assets ("3.3 (d)(i) Assets") (Section 3.3 (d)(i)); (b) to pay additional stock consideration based on the Company's post-closing performance; and (c) "to use reasonable [sic] commercial efforts to operate [Original NACSV] on a profitable basis and consistent [sic] with its historical practices" (Section 6.4).

16. After the closing, Plaintiff Dekle remained a very active employee of the Company, assisting with the post-closing transition, contacting customers, assisting with sales, and consulting on operations. Almost all of these activities were carried out from his home in Baldwin County, Alabama. On December 3, 2014, GDSI changed Plaintiff Dekle's title to Non-Executive Chairman of the Board, and he continued to carry on as before, almost always from Baldwin County, Alabama. Due to these activities and Plaintiff Dekle's responsibilities, the Company, through the efforts of Plaintiff Dekle, was regularly conducting business from within the State of Alabama.

17. The Purchase Agreement required, among other things, a post-closing accounting adjustment of balance sheet items. All of the parties looked to Baldwin County/Mobile County, Alabama, accountant J. Kenny Crow, Jr., to calculate the adjustment amount, and all of the parties relied on said adjustment amount as calculated and released by Mr. Crow from one of his Alabama offices.

18. Some of the 3.3 (d)(i) Assets were sold to Communication Laboratories, Inc. for $200,000.00 and $100,000.00, and some were sold to Potter County, Pennsylvania, for $162,000.00 (of which $106,000.00 belonged to Plaintiffs). Plaintiffs owned perfected UCC security interests in said Assets, and the Purchase Agreement required Defendants to remit the proceeds of the sales of those Assets to Plaintiffs within thirty (30) days after receipt of the purchase price, less any applicable sales tax.

19. By the time the sales of the 3.3 (d)(i) Assets were made, Defendants had breached their obligations to use commercially reasonable efforts to generate a profit as they overspent in making a flashy video and purchasing an ocean-front condominium. Defendants also breached their obligations to operate the Company consistently with historical practices, as they changed the Company's longstanding practice of not requiring pre-payments/deposits for certain customers, resulting in cancelled or failed sales. Further, by the time those sales were made, Plaintiffs had seen their stock value decline dramatically from $0.35 per share to $0.04 per share and otherwise realized that they had been defrauded into accepting stock in a failing business.

20. The proceeds of the sale of the 3.3 (d)(i) to Communication Laboratories, in the amount of $300,000.00, were delivered to Plaintiff Dekle in Baldwin County, Alabama. He offered to overnight these funds, despite his security interest therein, to Defendants on the condition that the same would be deposited and returned to Plaintiffs. However, Defendants declined that offer and instead repudiated their obligation to remit those funds (as well as the $106,000 from Potter County) in accordance with the contractually-required schedule. Therefore, Plaintiffs turned the $300,000.00 in checks over to their [undersigned] Alabama counsel, who continues to hold them..

21. Defendants have systematically alienated customers, vendors, and employees and have substantially and irreparably damaged the goodwill of the business, causing a substantial devaluation both of the business and Plaintiffs' shares of stock in GDSI and impairing the prospects of Plaintiffs' earning any further Post-Closing Additional Consideration.

22. Defendants also ran off Wally Bailey, a key longtime employee of the Company, assuring that the Company would suffer very difficult times trying to transition to new ownership.

## COUNT ONE

### SPECIFIC PERFORMANCE

23. Plaintiffs hereby incorporate the allegations set forth contained in all of the preceding paragraphs.

WHEREFORE, Plaintiffs respectfully request an order finding that the proceeds of the sales of the 3.3 (d)(i) Assets rightfully belong to the Plaintiffs and directing Defendants to instruct Communications Laboratories, Inc. to reissue the said $300,000.00 in checks to Plaintiffs to discharge, in part, Defendants' obligations to Plaintiffs under the Purchase Agreement.

## COUNT TWO

### BREACH OF CONTRACT - MONEY DAMAGES

24. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 22.

25. Defendants have materially breached the Purchase Agreement, and as a proximate consequence of said breach, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment for compensatory damages against Defendants NACSV and GDSI, jointly and severally, plus interest and costs.

## COUNT THREE

### Violation of Rule 10b5

26. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 22.

27. The actions of Defendants GDSI and Sullivan violate the United States Securities Act of 1934, including SEC Rule 10b5 promulgated pursuant to the Act.

28. Defendants made the false and misleading statements to Plaintiffs set out above, in connection with the sale by Defendants to Plaintiffs of the GDSI stock, with the intent to deceive, manipulate or defraud, and Plaintiffs reasonably relied on said false and misleading statements and suffered damages as a result.

WHEREFORE, Plaintiffs demand judgment against Defendants GDSI and Sullivan, jointly and severally, plus interest and costs.

### COUNT FOUR

### VIOLATION OF THE ALABAMA SECURITIES ACT

29. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 28.

30. The Defendants' actions as set out above, specifically in Paragraphs 12 and 28, violated Ala. Code § 8-6-17 in connection with the offering of and a sale of securities in Alabama, with said sale being consummated in Alabama.

31. As a result of Defendants' violation of *Ala. Code* Section 8-6-17, Plaintiffs are entitled to the relief set out in § 8-6-19, namely: "to recover the consideration paid for the security [GDSI stock], together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees."

WHEREFORE the premises considered, Plaintiffs demand judgment against Defendants, GDSI, and Sullivan, jointly and severally.

DATED March 2, 2015.

                                        Respectfully submitted,

                                        */s/ Richard E. Davis*
                                        RICHARD E. DAVIS (DAV046)

Of Counsel:
DAVIS & FIELDS, P.C.
Post Office Box 2925
Daphne, Alabama 36526
(251) 621-1555; (251) 621-1520, fax
rdavis@davis-fields.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of the filing to all parties and/or counsel of record.

                                        *s/ Richard E. Davis*
                                        **RICHARD E. DAVIS**

49279.wpd