IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN A. DEKLE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0069-WS-C |
| ) | |
| GLOBAL DIGITAL SOLUTIONS, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss or for Transfer of Venue (doc. 14). The Motion has been briefed and is now ripe.

**I.   Relevant Background.**

Plaintiffs, Brian A. Dekle and John Ramsay, brought this action against defendants, Global Digital Solutions, Inc. ("GDSI"), North American Custom Specialty Vehicles, Inc. ("New NACSV"), and Richard A. Sullivan, concerning a commercial dispute arising from the sale of plaintiffs' business interests to defendants.

The well-pleaded allegations of the First Amended Complaint reflect the following: Dekle and Ramsay were the founders and owners of North American Custom Specialty Vehicles, LLC ("Old NACSV"), which was in the business of designing and producing custom mobile command centers, principally for law enforcement and military agencies. In 2014, GDSI and Sullivan (an officer and/or director of GDSI who is alleged to have controlled that entity) became interested in purchasing Old NACSV. Thereafter, Dekle negotiated an agreement with GDSI and Sullivan for the sale of Old NACSV. Dekle desired an all-cash deal; however, GDSI and Sullivan prevailed on plaintiffs to accept a portion of their compensation for the transaction in the form of newly-issued GDSI stock. Plaintiffs and GDSI entered into an Equity Purchase Agreement (doc. 9, Exh. A) on June 16, 2014, with Article 3 of such Agreement delineating the cash and stock components of plaintiffs' compensation.

According to the First Amended Complaint, GDSI and Sullivan persuaded plaintiffs to accept stock as part consideration by making false representations on which plaintiffs relied to their detriment. Plaintiffs' pleading identifies seven categories of allegedly fraudulent representations, to-wit: (i) defendants had made deals to acquire specified companies in the business of law enforcement support; (ii) GDSI was building a turnkey conglomerate military and law enforcement support business; (iii) GDSI had reached agreement with a prominent European businessman to serve on its board of directors; (iv) the public announcement of this individual's appointment would boost GDSI's stock price well above the transactional valuation of $0.35 per share; (v) GDSI would fund New NACSV's production, obviating the need for working capital; (vi) GDSA would fund New NACSV's marketing activities and dedicate a named management employee to develop and carry out New NACSV's business; and (vii) GDSI would purchase a 56,000 square-foot facility where New NACSV could engage in production activities at the necessary volume. The First Amended Complaint alleges that plaintiffs relied on all of these false statements in entering into the Equity Purchase Agreement and accepting GDSI stock as part of the consideration for the sale of Old NACSV to GDSI. Regrettably, the GDSI stock price declined from $0.35 per share to $0.04 per share within months after execution of the Purchase Agreement.

In addition to these purported false representations, the First Amended Complaint alleges that defendants wronged plaintiffs in other ways as well. Specifically, plaintiffs contend that defendants materially breached at least three provisions in the Equity Purchase Agreement. First, plaintiffs assert that defendants failed and refused to pay them $406,000 in cash consideration for the post-closing sale of certain specified assets, despite having the funds to do so. Second, plaintiffs allege that defendants failed to comply with the contractual requirement that they use commercially reasonable efforts to generate a profit (which is significant because plaintiffs were to be paid additional consideration based on New NACSV's post-closing performance). Third, plaintiffs contend that defendants breached the contractual requirement that they operate New NACSV consistently with historical practices (which is significant to plaintiffs for the same reason).

Taking these factual allegations in the aggregate, Dekle and Ramsay interpose undifferentiated claims against GDSI, New NACSV, and Sullivan in the First Amended Complaint for specific performance (*i.e.*, an order requiring defendants to instruct the purchaser

of certain Old NACSV assets sold post-closing to reissue checks directly to plaintiffs in the amount of $300,000); breach of contract (*i.e.*, violation of the aforementioned terms of the Equity Purchase Agreement); violation of the United States Securities Act of 1934, including SEC Rule 10b-5, as codified at 17 C.F.R. § 240.10b-5 (*i.e.*, misrepresentations to induce plaintiffs to accept GDSI stock as partial consideration for the sale of Old NACSV); and violation of Alabama Code § 8-6-17 in connection with the offer and sale of securities in Alabama.

Defendants have filed a multifaceted Motion to Dismiss (doc. 14), challenging the First Amended Complaint on numerous grounds, including (i) lack of personal jurisdiction, (ii) transfer of venue for the convenience of parties and witnesses, (iii) insufficient pleading of securities fraud claims under federal and Alabama law, (iv) lack of standing to pursue Rule 10b-5 claim, (v) dismissal of the Rule 10b-5 claim under the "bespeaks caution" doctrine, and (vi) shotgun pleading. The Court will examine these legal issues sequentially.

**II.    Analysis.**

    *A.    Personal Jurisdiction.*

As an initial matter, defendants (GDSI, New NACSV, and Sullivan) maintain that dismissal is warranted under Rule 12(b)(2), Fed.R.Civ.P., because personal jurisdiction is lacking as to each of them.

        *1.    Legal Framework.*

In the absence of contractual acquiescence to personal jurisdiction, "[w]hen a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp.2d 1056, 1060 (S.D. Ala. 2007) (citations omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (similar). In Alabama, this inquiry collapses into a single question because Alabama's long-arm statute permits its courts to exercise personal jurisdiction to the full extent authorized by the Due Process Clause. *See Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) ("the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible"); *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("Alabama's long-

arm statute permits service of process as broad as the permissible limits of due process.") (citation and internal quotation marks mitted). Accordingly, the operative query is whether the exercise of personal jurisdiction over each of GDSI, New NACSV and Sullivan in Alabama comports with constitutional safeguards.

Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997); *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (similar). The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific. Moreover, "we may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction." *Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010).

2.     *Jurisdictional Analysis.*

The parties devote substantial chunks of their briefing on the Motion to Dismiss to setting forth and analyzing jurisdictional facts reflecting each defendant's contacts (or lack thereof) with the State of Alabama, and debating whether said contacts do or do not exceed the threshold of minimum contacts with Alabama. As plaintiffs correctly assert, however, the federal securities law claim found at Count Three and brought under the United States Securities Act of 1934 and SEC Rule 10b-5 obviates any need for an Alabama-based minimum contacts inquiry at this stage of the proceedings.

The Eleventh Circuit has held "that the applicable forum for minimum contacts purposes is the United States in cases where … the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process." *Carrillo*, 115 F.3d at 1544 (footnote omitted). Thus, "[w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *Application to Enforce Administrative Subpoena Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996); *see also In re S1 Corp. Securities Litigation*, 173 F. Supp.2d 1334, 1345 (N.D. Ga. 2001) (same); *Steinberg v. A Analyst Ltd.*, 2009 WL 3055226, *3 (S.D. Fla. Sept. 21, 2009) ("In cases where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process, the requirement of 'minimum contacts' with a forum

state is inapplicable. … In such circumstances, minimum contacts with the United States suffice.") (citations omitted). "Specific contacts with the district in which enforcement is sought … are unnecessary." *Knowles*, 87 F.3d at 417.

It is well-settled – and defendants do not contest – that federal securities laws undergirding Count Three of the First Amended Complaint provide for worldwide service of process. *See, e.g., Carrillo*, 115 F.3d at 1544 ("in this case our personal jurisdiction is invoked based on the applicable federal securities laws, which provide for worldwide service of process"); *Grail Semiconductor, Inc. v. Stern*, 2012 WL 5903817, *3 (S.D. Fla. Nov. 26, 2012) ("these federal securities laws provide for worldwide service of process"). Therefore, for purposes of Count Three, the minimum contacts analysis hinges on whether defendants have sufficient minimum contacts with the United States as a whole, not Alabama. Defendants do not contest the existence of such minimum contacts; in fact, they concede that "Defendants do not contend that personal jurisdiction would be lacking should the Court find cognizable securities claims." (Doc. 21, at 7 n.4.) In light of this admission, there is personal jurisdiction over defendants as to the federal securities law claim presented in Count Three.

The presence of personal jurisdiction over defendants with regard to Count Three confers pendent personal jurisdiction over them as to the remaining state-law claims. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citations omitted); *see also Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp.2d 1370, 1374 (S.D. Fla. 2012) (similar).[1] In short, the existence of personal jurisdiction over all

---

[1] That said, where the doctrine of pendent personal jurisdiction applies, "if the only jurisdictionally sufficient claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim should be dismissed as well … unless Plaintiff can independently establish personal jurisdiction" with respect to that pendent claim. *Koch*, 847 F. Supp.2d at 1378 (citation omitted).

defendants as to Count Three gives rise to pendent personal jurisdiction over all defendants with respect to Counts One, Two and Four.[2]

As pleaded, the First Amended Complaint supports personal jurisdiction over all three defendants, based on the worldwide service of process provisions applicable to the federal securities law claim at Count Three, and the doctrine of pendent personal jurisdiction. Accordingly, defendants' Motion to Dismiss for lack of personal jurisdiction is **denied**, with leave to renew if Count Three is subsequently dismissed or otherwise deemed not to be cognizable.

### B.    *Request for Transfer of Venue.*

In the alternative to their Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, defendants urge this Court to transfer venue to the U.S. District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).[3]  That statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296,

---

[2]    Although defendants' Motion to Dismiss leads with the personal jurisdiction issue, they suggest in their reply brief that the Court should take up the merits of Count Three first, then turn to a personal jurisdiction analysis. "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997); *see also Breland v. Levada EF Five, LLC*, 2015 WL 225394, *2 (S.D. Ala. Jan. 16, 2015) (same).  That is precisely what this Court has done.  If (in some later decision) plaintiffs' Rule 10b-5 claim is found not to be cognizable, then the Court will reexamine the personal jurisdiction issue upon proper application by defendants, with an eye towards scrutinizing the sufficiency of contacts as between each defendant and the State of Alabama.  *See generally Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp.2d 1213, 1223-24 (S.D. Fla. 2009) (recognizing judicial "discretion to reserve ruling on the jurisdictional issues until a decision on the merits can be rendered," where "it is impossible to decide one without the other").  As long as Count Three remains in play, however, it is unnecessary to explore a personal jurisdiction / minimum contacts analysis any further, and the Court declines to do so.

[3]    Although plaintiffs' Response (doc. 20) outlines why they contend venue is proper in the Southern District of Alabama, defendants do not appear to maintain otherwise. Indeed, defendants explain that "Defendants are not arguing that venue is improper, but rather are asking the Court to transfer the venue to a more convenient forum." (Doc. 21, at 9.)

1312 (S.D. Ala. 2012) (citations omitted). "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *see also Osgood v. Discount Auto Parts, LLC*, 981 F. Supp.2d 1259, 1263 (S.D. Fla. 2013) ("The burden is ultimately on the party moving for transfer to establish that another district is a more convenient forum than the plaintiff's chosen forum.").

There appears to be no reasonable dispute that venue would be proper in the Middle District of Florida.[4] As such, the § 1404(a) inquiry here focuses on whether defendants have established that the Middle District of Florida is a more convenient forum than the Southern District of Alabama, and whether the interests of justice favor such a transfer. *See Continental Motors*, 882 F. Supp.2d at 1313 ("[O]nce it is established that the action could originally have been brought in the proposed transferee forum …, courts examine whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case.") (citation and internal quotation marks omitted). Relevant factors in that balancing process include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

---

[4] In particular, (i) all defendants appear to be Florida citizens and at least one appears to reside in the Middle District of Florida, rendering venue proper in that district pursuant to 28 U.S.C. § 1391(b)(1); and (ii) a substantial portion of the events giving rise to plaintiffs' claims occurred in the Middle District of Florida, rendering venue proper in that district pursuant to 28 U.S.C. § 1391(b)(2). Plaintiffs challenge neither of these propositions. Accordingly, the Court readily finds that this action could have been brought in the Middle District of Florida, even without consideration of the "strikingly broad" venue provision of the Securities Act of 1934, as it relates to Count Three. *See generally Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1253-54 (11th Cir. 2011) ("The venue provision of the 1934 Act is strikingly broad and allows suits to be brought anywhere that the Act is violated or a defendant does business or can otherwise be found.") (citation and internal quotation marks omitted).

In applying and balancing these factors, the Court recognizes that plaintiffs' decision to file suit in the Southern District of Alabama is entitled to substantial weight in the § 1404(a) analysis and will not lightly be cast aside. *See, e.g., Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").[5] Moreover, plaintiffs have made a showing that plaintiff Brian A. Dekle resides in this judicial district and is stricken with pancreatic cancer for which he has received (and is still receiving) upwards of 50 chemotherapy treatments in an experimental protocol. (Dekle Aff. (doc. 20, Exh. A), ¶ 3 & n.1.) Dekle's grave illness, his ongoing course of treatment here, and the attendant constraints on his ability to travel weigh heavily against a § 1404(a) transfer to a different judicial district. *See Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 930 (W.D. Mo. 1985) ("the court is compelled to consider plaintiff Robert Houk's medical condition" where transferring case "might pose a risk, of whatever magnitude, to plaintiff's continued rehabilitation or effectively force him to abandon his right to be present at the trial of this lawsuit"); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980) ("in considering whether the interest of justice would be served by transferring this case from plaintiff's home district to an alternative forum the Court may consider plaintiff's special medical difficulties").[6]

---

[5] *See also Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, --- U.S. ----, 134 S.Ct. 568, 581 n.6, 187 L.Ed.2d 487 (2013) (in a typical case where § 1404(a) motion is brought, "[t]he Court must also give some weight to the plaintiffs' choice of forum"); *Osgood*, 981 F. Supp.2d at 1266 ("Generally, the plaintiff's choice of forum is given considerable deference.").

[6] Defendants seek to minimize this concern, casting it aside by reasoning that "[i]f Plaintiff Dekle is no longer able to travel to Florida, there are certainly reasonable accommodations which could be made to secure his testimony." (Doc. 21, at 11.) But this issue goes far beyond mere preservation of Dekle's testimony for trial. He is a plaintiff in this lawsuit, not merely a fact witness. He has a profound financial, personal, and emotional stake in the outcome of this litigation, and a right to be present at the trial where these matters will be decided. To transfer this action to the Middle District of Florida would be to erect a substantial (and perhaps insuperable) impediment to Dekle's ability to attend, observe and participate directly in these proceedings. Such a result runs sharply and directly contrary to the equitable considerations underlying § 1404(a), and is in no way ameliorated by defendants' offer of "reasonable accommodations which could be made to secure his testimony."

In an effort to satisfy their burden of establishing that the Middle District of Florida is a more convenient forum and that the interests of justice favor a transfer, defendants point to the convenience of witnesses (many of whom are alleged to reside in or near the proposed transferee forum), the location of documents and evidence, the convenience of defendants' officers and employees, and the availability of process to compel attendance of unwilling witnesses. (*See* doc. 21, at 10.) Defendants have not shown, however, that it will be unduly burdensome to ship relevant documents and evidence from central Florida to southern Alabama for trial,[7] or that defendants' officers or employees would incur hardship by being required to travel to a neighboring state for trial. As the Eleventh Circuit has recognized, "modern methods of transportation and communication have lessened the burden of defending a suit in a foreign jurisdiction." *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1320 (11th Cir. 2004). This is particularly true where, as here, defendants' operations are based in a state adjacent to this forum, such that vast geographic differences (and the associated inconveniences and expenses) are simply not in play here. As for defendants' reference to the availability of process to compel witness attendance, this factor is entitled to little weight given the absence of any showing that (i) critical out-of-district witnesses will be unwilling to participate absent court compulsion, and (ii) even if such witnesses exist, no reasonable accommodations are available to secure their trial testimony.[8]

---

[7] Defendants characterize the "large mobile command centers which are the subject of Plaintiffs' claim" as physical "evidence" that is "located in Florida." (Doc. 21, at 10.) However, they do not explain why inspection or examination of such mobile command centers by the trier of fact is or might be necessary, nor do they elaborate why it would be a hardship or inconvenience to transport these command centers (which defendants describe as "mobile") to this judicial district in such an event.

[8] On this point, defendants' argument is framed in generalities. Defendants have identified no key witnesses who will be adversely affected by conducting proceedings in this forum, nor have they provided specifics as to the nature of such witnesses' expected testimony or their reticence or refusal to travel. *See, e.g., Breeden v. Tricom Business Systems, Inc.*, 244 F. Supp.2d 5, 10 (N.D.N.Y. 2003) (finding availability-of-process factor not to favor transfer where "neither party has demonstrated that these witnesses will not appear voluntarily or that the use of videotaped depositions will not be adequate here"); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp.2d 66, 73 (D.D.C. 1998) (finding this factor to be entitled to little weight where "[d]efendants state that the potential witnesses residing in California are beyond the subpoena power of this Court, but they do not suggest that these witnesses will refuse to appear if the trial is held in the District of Columbia"); *Houk*, 613 F. Supp. at 931 (factor is not controlling where (Continued)

The Court does not doubt that it would be more convenient for defendants to litigate this action in their home state and their home forum; however, a § 1404(a) transfer is not appropriate where its result would be merely to shift the inconvenience from one side to the other. *See, e.g., Rice v. PetEdge, Inc.*, 975 F. Supp.2d 1364, 1374 (N.D. Ga. 2013) ("A desire to shift the inconveniences of litigation onto plaintiff is not a valid basis for a transfer under § 1404(a)."); *Steifel Laboratories, Inc. v. Galderma Laboratories, Inc.*, 588 F. Supp.2d 1336, 1339 (S.D. Fla. 2008) ("Ultimately, transfer can only be granted where the balance of convenience of the parties *strongly* favors the defendant."); *Cellularvision Technology & Telecommunications, L.P. v. Alltel Corp.*, 508 F. Supp.2d 1186, 1189 (S.D. Fla. 2007) ("where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain") (citations and internal quotation marks omitted). The Court will not grant a transfer under § 1404(a) to make the proceedings marginally more convenient for defendants, while making them extremely inconvenient for plaintiffs, particularly given plaintiff Dekle's serious medical condition.

The bottom line is this: Plaintiffs' choice of this forum is entitled to deference. Plaintiff Dekle's health is such that, as a practical matter, transferring this case to the Middle District of Florida may preclude him from attending any hearings or the trial. Plaintiffs have made a showing that substantial operative facts occurred in this District. And the underlying Equity Purchase Agreement provides on its face that Alabama law governs. These factors all weigh against a § 1404(a) transfer. On the other side of the scale, defendants have not shown that retaining this forum will work undue hardship on them or any witnesses. By all appearances, a Southern District of Alabama forum will not meaningfully impair defendants' ability to marshal and present their documents, evidence and witnesses at trial. To be sure, this forum is less convenient for defendants' officers and employees (and perhaps other witnesses) than the Middle District of Florida would be. Upon careful consideration of the totality of the circumstances, however, and especially given that a transfer would likely foreclose plaintiff Dekle from being

---

"the defendant's argument merely assumes that the witnesses in question would not appear voluntarily" and "defendant has not shown that use of video-taped depositions would be inadequate," particularly given that "it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail"). Inasmuch as many of these witnesses are alleged to be defendants' officers or employees, it appears likely that defendants will be able to make suitable arrangements for their appearance in any forum.

able to attend any hearings, court proceedings or trial, the Court concludes that movants have not met their burden of showing that a balancing of the convenience of the parties and the interests of justice favors transfer in this case. *See, e.g., S.E.C. v. Lauer*, 478 Fed.Appx. 550, 554 (11th Cir. Apr. 19, 2012) ("a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice for Section 1404(a) purposes"). Accordingly, defendants' request for transfer of venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) is **denied**.

### C. Other Alleged Pleading Deficiencies.

Having considered and rejected defendants' requests for relief on grounds of lack of personal jurisdiction and inconvenient venue, the Court now turns to the fistful of Rule 12(b)(6) arguments articulated in the Motion to Dismiss. In particular, defendants assert that the First Amended Complaint fails to state a claim on which relief can be granted because (i) Counts Three and Four fail to plead adequately claims for violation of federal or Alabama securities laws; (ii) plaintiffs lack standing to pursue Count Three; (iii) Count Three is fatally deficient under the "bespeaks caution" doctrine; and (iv) the Amended Complaint is a shotgun pleading. The Court will address each of these contentions in turn.[9]

#### 1. Sufficiency of Pleading Securities Fraud.

In Count Three, plaintiffs allege that defendants violated Section 10(b) of the Securities Exchange Act of 1934, including SEC Rule 10b-5, which provides that it is unlawful to use instrumentalities of interstate commerce "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To state a claim for a § 10(b) violation, a plaintiff must allege "(1) the existence of a material misrepresentation (or omission), (2) made with scienter (*i.e.*, 'a wrongful state of mind'), (3) in

---

[9] For purposes of the Rule 12(b)(6) analysis as to each of these arguments, the Court accepts as true all well-pleaded factual allegations of the First Amended Complaint, and draws all reasonable inferences in the plaintiffs' favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Of course, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

connection with the purchase or sale of any security, (4) on which the plaintiff relied, and (5) which was causally connected to (6) the plaintiff's economic loss." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010) (citations omitted). "Because Rule 10b-5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity." *Id.* Defendants' position is that the First Amended Complaint flunks each of the first, second and fifth requirements.[10]

                a.      *Existence of Material Misrepresentation.*

To plead a misrepresentation actionable in a § 10(b) or Rule 10b-5 claim, a plaintiff must satisfy both the traditional Rule 9(b) pleading standard and certain additional requirements imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) "requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted). Additionally, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

In their Motion to Dismiss, defendants argue that the First Amended Complaint fails to comport with these pleading rules because "it fails to identify exactly what statements were made, who made them, and why they were 'false and misleading.'" (Doc. 14, at 22.) The First

---

[10] This analysis will focus on the federal securities fraud claim presented in Count Three of the First Amended Complaint. However, the Court's reasoning and conclusions apply with equal force to Count Four, which alleges securities fraud under the Alabama Securities Act, because the legal principles governing both causes of action are virtually identical. *See, e.g., Buffo v. Graddick*, 742 F.2d 592, 595 (11th Cir. 1984) ("the Alabama statute at issue here has generally been construed in accordance with federal precedent governing Rule 10b-5"); *Buffo v. State*, 415 So.2d 1158, 1162 (Ala. 1982) ("[S]ince there are few Alabama cases construing the Alabama securities laws, federal cases should be reviewed to aid in the proper interpretation of the corresponding sections of Alabama statutory law inasmuch as the sections are virtually identical.").

Amended Complaint specifically identifies seven "[r]epresentations made by Defendants GDSI and Sullivan" that "were false and made with the intent to deceive Plaintiffs to induce them to accept stock as partial satisfaction of the purchase price." (Doc. 9, ¶¶ 12-13.) Several of these statements are couched in concrete, specific terms, such as representations that "GDSI had struck deals to acquire … Lawmen's Safety Supply of North Carolina, and Remington Outdoor Supply Company" and that "GDSI had entered into an agreement to place on its board of directors a European businessman from a royal family with financial capital and connections." (*Id.*, ¶¶ 12(B)-(C).)[11] These are specific allegations of material misrepresentations. The problem is that, as pointed out by defendants, plaintiffs have failed to provide "specific allegations explaining who made the representation, when it was made, and why it was false or misleading." (Doc. 21, at 5.) Plaintiffs offer to remedy that omission via amendment to their Complaint. The Court finds that plaintiffs must do so in order to be entitled to proceed on Counts Three and Four.[12]

        *b.     Scienter.*

To satisfy the scienter element of a § 10(b) claim, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Thompson*, 610 F.3d at 633 (citing 15 U.S.C. § 78u-4(b)(2)). That required state of mind is "a showing of either an intent to deceive, manipulate, or defraud, or severe recklessness." *Id.* at 634

---

[11] Defendants are correct that several other misrepresentations identified in the First Amended Complaint appear to be statements of opinion and forecasts of future events. Such statements "are generally not actionable as fraud" unless "the defendant's opinions were both false and not honestly believed when they were made." *In re Sanofi Securities Litigation*, --- F. Supp.3d ----, 2015 WL 365702, *12 (S.D.N.Y. Jan. 28, 2015) (citations omitted). To proceed on securities fraud claims predicated on such statements of opinion, "plaintiffs must allege with particularity provable facts to demonstrate that the statement of opinion is both objectively and subjectively false." *Id.* (citations and internal quotation marks omitted). Plaintiffs have not done so with respect to the alleged misrepresentations identified in subparagraphs 12(D), (E), (F) and (G). To the extent that plaintiffs wish to predicate § 10(b) or Rule 10b-5 claims on those alleged misrepresentations, they must replead those allegations to conform with these legal prerequisites.

[12] Plaintiffs must also either replead the other alleged misrepresentations identified in the First Amended Complaint in a manner that would comport with the above-described pleading requirements of Rule 9(b) and the PSLRA or, alternatively, omit those alleged misrepresentations from their second amended complaint. The applicable pleading standard must be satisfied as to each misrepresentation in order for plaintiffs to be entitled to proceed as to same in Counts Three and Four.

(citations and internal quotation marks omitted). "[P]laintiffs can establish recklessness by adequately alleging that defendants knew facts or had access to non-public information contradicting their public statements and therefore knew or should have known they were misrepresenting material facts." *In re Sanofi Securities Litigation*, --- F. Supp.3d ----, 2015 WL 365702, *13 (S.D.N.Y. Jan. 28, 2015) (citations and internal quotation marks omitted). To evaluate a pleading's sufficiency on this point, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *FindWhat*, 658 F.3d at 1300 (citations omitted). Moreover, "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017-18 (11th Cir. 2004).

In their First Amended Complaint, plaintiffs' sole allegation as to scienter is a singular, conclusory statement that the purported misrepresentations "were false and made with the intent to deceive Plaintiffs." (Doc. 9, ¶ 13.) That assertion falls well short of the legal requirement that plaintiffs asserting a securities fraud claim must plead with particularity facts establishing scienter as to each allegedly fraudulent representation. *See, e.g., Thompson*, 610 F.3d at 634 ("These conclusory allegations are insufficient to establish a strong inference that the defendants acted with the required state of mind.") (citation and internal quotation marks omitted). Once again, plaintiffs have volunteered to file an amended complaint to bolster these allegations of scienter to comport with the legal standard. Should plaintiffs wish to pursue Counts Three and Four, it will be necessary for them to do just that.

         c.  *Loss Causation.*

Securities fraud claims under § 10(b) have a loss causation element, which "requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses." *FindWhat*, 658 F.3d at 1309. "To show loss causation in a § 10(b) claim, a plaintiff must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013); *see also Sapssov v. Health Management Associates, Inc.*, 22 F. Supp.3d 1210, 1228 (M.D. Fla. 2014) ("Loss causation requires plaintiffs to plead, and ultimately prove, a causal connection between the misrepresentation and the investment's subsequent decline in value."); *Damian v. Montgomery County Bankshares, Inc.*, 981 F. Supp.2d 1368, 1383 (N.D. Ga. 2013) ("To adequately plead this

element, the plaintiff must allege that the share price of the security at issue fell significantly after the truth became known … or that the defendant's misstatements concealed a foreseeable risk that ultimately materialized and negatively affected the value of the security.") (citations and internal quotation marks omitted).  As defendants correctly observe, the First Amended Complaint includes allegations that defendants' misrepresentations induced plaintiffs to accept the GDSI stock as partial consideration for the sale of Original NACSV, but is silent as to the causal link (if any) between such misrepresentations and the GDSI stock's subsequent precipitous decline in value, as alleged in the pleading.  Plaintiffs must amend their Complaint to satisfy this requirement in order to proceed as to Counts Three and Four.

                              d.        *Whether Plaintiffs Are Actually Alleging Securities Fraud.*

As a further ground for their Motion, defendants urge the Court to dismiss Counts Three and Four because plaintiffs are not really alleging securities fraud at all, but are instead complaining about breach of contract or corporate mismanagement that only tangentially relates to GDSI securities.  (*See* doc. 14, at 26-27.)  This argument is not persuasive.

Notwithstanding defendants' attempt to minimize or recharacterize the First Amended Complaint, plaintiffs' factual allegations implicate substantially more than mere breach of contract and corporate mismanagement.  Whether there are sufficient facts to satisfy the particular legal requirements of securities fraud is unclear at present, given the pleading deficiencies enumerated *supra*.  However, the Court cannot make a blanket determination as a matter of law at this time that the factual scenario alleged in the First Amended Complaint is incapable of supporting cognizable claims of securities fraud.  After all, the gist of Counts Three and Four is that defendants knowingly lied to plaintiffs to convince them to accept grossly overvalued company stock as partial compensation for a business transaction, and that the stock price subsequently collapsed.  Whether or not such allegations satisfy the legal particulars of actionable securities fraud under § 10(b) and Rule 10b-5, they have the look and feel of something far more serious than a mere breach of contract or a poorly-run business.  Defendants do not explain why they believe that allegedly tricking someone into accepting near-worthless stock as compensation for a business deal (which, at the heart of it, appears to be what plaintiffs are alleging happened here) can never constitute securities fraud.  Accordingly, defendants' Motion to Dismiss is **denied** as to this ground for relief.

## 2. *Plaintiffs' Standing to Pursue Securities Fraud Claims.*

Next, defendants challenge whether plaintiffs have legal standing to bring federal securities fraud claims pursuant to § 10(b) and Rule 10b-5. It is well settled that, "[t]o have standing to bring a private securities claim under § 10(b) or Rule 10b-5, one must be a purchaser or seller of securities." *APA Excelsior III, L.P. v. Windley*, 329 F. Supp.2d 1328, 1346 (N.D. Ga. 2004).[13] Defendants theorize that plaintiffs do not qualify as "purchasers" of GDSI securities because they received them as consideration in a business transaction; however, they provide no authority to support such a notion. Common sense suggests that plaintiffs did in fact "purchase" GDSI stock, inasmuch as they conveyed Old NACSV to defendants in exchange for GDSI stock and cash. Defendants fail to identify a single authority for the proposition that one does not qualify as a "purchaser" of securities for § 10(b) standing purposes unless one purchases the stock with money, as opposed to furnishing some other valuable consideration.[14]

---

[13] *See also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1267 (11th Cir. 2006) ("Standing is established by allegations that plaintiffs bought or sold shares of the stock in question within a reasonable period of time after the allegedly fraudulent conduct occurred to support an inference of reliance.") (citation omitted); *Licht v. Watson*, 567 Fed.Appx. 689, 691 (11th Cir. May 22, 2014) ("the standing rule … permits only purchasers and sellers of securities, and those with contracts to purchase and sell securities, to bring suit under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, which implements Section 10(b)").

[14] There is contrary authority. *See generally Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999) ("When an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a 'purchase or sale' for purposes of bringing a Rule 10b-5 action."); *In re Cendant Corp. Securities Litigation*, 81 F. Supp.2d 550, 556 (D.N.J. 2000) ("To 'purchase or sell' stock options, employee-purchasers must give up a specific consideration in return for a separable financial interest with the characteristics of a security.") (citations and internal quotation marks omitted); *Zelman v. Cook*, 616 F. Supp. 1121, 1128 (S.D. Fla. 1985) ("The Plaintiff had standing to proceed in a direct action under 10(b) and Rule 10b-5 as a purchaser of securities, because he actually exchanged his shares in Cilco for shares in the new company pursuant to the merger transaction, and because he alleges that the fraudulent activity of the Defendants caused him to exchange his stock."); 15 U.S.C. § 77b(a)(3) ("The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, ***for value***.") (emphasis added). "In determining which parties qualify as 'purchasers or sellers,' … the Court must read the statute flexibly, not technically and restrictively." *Berk v. Maryland Publick Banks, Inc.*, 6 F. Supp.2d 472, 473 (D. Md. 1998) (citation and internal quotation marks omitted).

Equally unavailing is defendants' unsupported assertion that plaintiffs are disqualified from having standing because plaintiff Dekle's continuing involvement with the business "was a lot more like a general partnership or joint venture." (Doc. 14, at 27.) Integral to this argument is defendants' contention that "partners or venturers have sufficient power to protect their interests without the aid of the federal securities laws." (*Id.* at 27-28.)[15] The First Amended Complaint contains no facts, and the Court is aware of none, conclusively establishing that plaintiff Dekle was empowered to protect his interests in avoiding being defrauded by defendants by virtue of his transitional role within the company following the sale of Old NACSV. On this meager showing by defendants, the Court is unwilling and unable to declare that Dekle is outside the zone of interests that Congress and the Alabama state legislature intended to protect via securities laws. Defendants' Motion for Dismiss is **denied** as to this ground.

### 3. The "Bespeaks Caution" Doctrine.

As an additional ground for seeking dismissal of the First Amended Complaint, defendants invoke the "bespeaks caution" doctrine. "Under the bespeaks caution doctrine, a forward-looking statement is rendered immaterial as a matter of law when accompanied by meaningful cautionary language. … The anti-fraud provisions of the securities laws are plainly disinterested with immaterial statements, no matter the state of mind of the speaker." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796 (11th Cir. 2010) (citations omitted). Defendants reason that, insofar as plaintiffs are seeking to parlay statements in GDSI's public filings into actionable securities fraud claims, those claims are precluded by the "bespeaks caution" doctrine. The point, apparently, is that those public filings contain meaningful cautionary statements and specific warnings to offset any forward-looking statements therein that plaintiffs may have latched onto.

Plaintiffs counter that this doctrine is irrelevant because GDSI's public filings "are not the basis of Plaintiffs' allegations of securities fraud." (Doc. 20, at 19.) The Court agrees.

---

[15] For this point, defendants rely on *S.E.C. v. Professional Associates*, 731 F.2d 349, 356 (6th Cir. 1984), in which the Sixth Circuit rebuffed a plaintiff's attempts to import securities laws into the context of investors in a general partnership or a joint venture. *Professional Associates* is obviously distinguishable from the case at bar, where plaintiffs plead that GDSI "is a publicly traded Delaware corporation." (Doc. 9, ¶ 2.) More generally, the analogy between plaintiff Dekle and a general partner or joint venture is not bolstered by any facts alleged in the pleadings.

Nothing on the face of the First Amended Complaint would support a reasonable inference that Counts Three and Four are predicated on misrepresentations in GDSI's public filings; therefore, the "bespeaks caution" doctrine is not a viable ground for dismissal of those causes of action at this time. Of course, defendants may renew this argument at a later date if subsequent pleading amendments or discovery reveals a factual basis for it. As of now, however, none exists.

### 4. *Shotgun Pleading.*

Lastly, defendants brand the First Amended Complaint a "shotgun pleading" because each count references all preceding paragraphs, and because all defendants are lumped together, such that it is impossible to determine the precise misconduct with which each defendant is charged. Much ink has been spilled about shotgun pleadings, which have been roundly criticized at both the appellate and district court levels. *See, e.g., Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings wreak havoc on the judicial system. … Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.") (citations and internal marks omitted); *Hickman v. Hickman*, 563 Fed.Appx. 742, 744 (11th Cir. Apr. 23, 2014) ("We have repeatedly condemned shotgun pleadings.").

Defendants' stated concern that each claim for relief references all preceding paragraphs is not compelling. To be sure, the First Amended Complaint employs the commonplace pleading convention of beginning each count with the statement, "Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 – 22." (Doc. 9, ¶¶ 23, 24, 26, 29.) If, as defendants argue, such language automatically, necessarily mandates that a complaint be jettisoned as a shotgun pleading, then precious few civil pleadings would survive. The defining defect in shotgun pleadings is not the incorporation by reference *per se*, but is instead when such incorporation renders it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). Not so here. In contrast to the typical shotgun pleading awash in dozens of paragraphs of disparate and unrelated facts, untethered to any of numerous pleaded causes of action, the First Amended Complaint consists of just 22 paragraphs of facts, whose nexus to each of the four (4) pleaded causes of action is readily apparent on the face of the document. Nothing about this aspect of the First Amended

Complaint reasonably triggers the legitimate practical case-management concerns underlying the "shotgun pleading" decisional authorities.

Defendants' other "shotgun pleading" argument is substantially stronger. Indeed, defendants correctly assert that the First Amended Complaint repeatedly lumps all three defendants (GDSI, New NACSV, and Sullivan) together, rendering it unclear and confusing as to which defendants are being charged with which misconduct. For example, plaintiffs bring their breach of contract claim against "Defendants" collectively. Does that include defendant Sullivan, who has not even been pleaded to be a party to the Equity Purchase Agreement? Which claims involve defendant New NACSV, as opposed to GDSI? The answers to these and many other related questions cannot be reasonably gleaned from even a careful review of the First Amended Complaint. The Court will afford plaintiffs a limited opportunity to clarify this shortcoming via amendment to their pleading.[16]

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Dismiss or Alternatively, for Transfer of Venue (doc. 14) is **granted in part**, and **denied in part**;

2. The Motion to Dismiss is **granted** as to Counts Three and Four (which are inadequately pleaded as to specific details concerning the alleged misrepresentations, scienter and loss causation) and as to the argument that the First Amended Complaint is a deficient shotgun pleading because it lumps all defendants together;

---

[16] Plaintiffs are cautioned that this is not an iterative process under which they will receive unlimited opportunities to plead and replead their complaint until they satisfy all legal and procedural requirements. Should defects persist in their Second Amended Complaint, arguments in favor of dismissal (rather than repleader) may resonate. *See generally Hickman*, 563 Fed.Appx. at 744 ("After concluding that Hickman's complaint constituted a shotgun pleading, the court was correct in ordering her to amend and re-file a more definite complaint. … The district court was also correct in dismissing Hickman's complaint when she failed to comply with this order.") (citations omitted); *Valentine Ventures, LLC v. Gulf Coast Mineral, LLC*, 2015 WL 3422588, *1 (S.D. Ala. May 28, 2015) (where second amended complaint corrected no deficiencies from its predecessor, authorizing plaintiffs to amend one more time, with the caveat that "[t]he Court does not anticipate extending the plaintiffs any additional opportunities to file an acceptable pleading").

3. In lieu of dismissing the First Amended Complaint on the grounds specified in item 2, the Court **orders** plaintiffs to file their Second Amended Complaint, correcting all of these delineated defects, on or before **June 15, 2015**, with defendants' answer or other responsive pleading to be filed not later than **June 25, 2015**; and

4. In all other respects, the Motion to Dismiss or for Transfer of Venue is **denied**.

DONE and ORDERED this 5th day of June, 2015.

                                      s/ WILLIAM H. STEELE
                                      CHIEF UNITED STATES DISTRICT JUDGE