**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DISTRICT**

| | | |
|---|---|---|
| **BRIAN A. DEKLE and JOHN RAMSAY,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| ***vs.*** | * | **Case No.: 1:15-CV-00069** |
| | * | |
| **GLOBAL DIGITAL SOLUTIONS, INC.; NORTH AMERICAN CUSTOM SPECIALTY VEHICLES, INC.; and RICHARD J. SULLIVAN,** | * | |
| | * | |
| **Defendants.** | * | |

## SECOND AMENDED COMPLAINT

Plaintiffs, pursuant to Order of the Court (Doc. 29)[1] amend their First Amended Complaint to address pleading deficiencies identified in said Order.[2]

As amended, the Complaint reads as follows:

## PARTIES

1. Plaintiff Brian A. Dekle is a resident of Baldwin County, Alabama, and Plaintiff John Ramsay is a resident of Mobile County, Alabama.

[1]Consistent with the Suggestion of Death (Doc. 31), sadly, Plaintiff Brian Dekle passed away on June 2, 2015. A probate estate has not yet been opened, but a petition to probate his last will and testament will be filed in Baldwin County, Alabama very soon. Plaintiffs' counsel are in the position of not yet being authorized by Plaintiff Dekle's Personal Representative to file this amended complaint or otherwise to act on behalf of Plaintiff Dekle's interest, but today's deadline for filing this Second Amended Complaint, together with the surviving Plaintiff John Ramsay's interest, dictate that this Second Amended Complaint be filed today.

[2]Plaintiffs plan to seek leave to file a Third Amended Complaint to add allegations of Defendant GDSI's breach of its obligation to issue additional stock to Plaintiffs. Those additional allegations would not turn on matters addressed in the Court's Order. Plaintiffs' counsel deemed inappropriate, at this time, the addition of those allegations.

2. Defendant Global Digital Solutions, Inc. ("GDSI"), is a publicly traded Delaware corporation with its principal place of business in Florida, and is the sole shareholder of Defendant North American Custom Specialty Vehicles, Inc. ("Defendant NACSV").

3. Defendant NACSV is a Delaware corporation formerly known as GDSI Acquisition Corporation and is the surviving entity from the merger of GDSI Acquisition Corporation and North American Custom Specialty Vehicles, L.L.C., an Alabama limited liability company (the "Original NACSV").

4. Defendant Richard J. Sullivan ("Sullivan") is, and was at all times pertinent hereto, President, CEO, and Chairman of the Board of Defendant GDSI and was in a position to, and did control, GDSI. Sullivan's residence is believed to be in Florida.

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of a different state than Defendants and because the value of the matter in controversy exceeds $75,000, and pursuant to 28 U.S.C. § 1331 as a result of the Rule 10b5 claim arising under the Securities Act of 1934.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims are based occurred in the Southern District of Alabama.

**SUBJECT MATTER**

7. This lawsuit arises out of a transaction in which Plaintiffs sold their interest in Original NACSV to GDSI Acquisition Corporation in exchange for cash and GDSI stock. The transaction details are set forth in that certain Equity Purchase Agreement ("the Purchase Agreement") attached to this Second Amended Complaint as Exhibit "A". The Purchase Agreement required Defendant GDSI and Original NACSV, among other things, (a) to pay additional cash consideration upon the post-closing sale of certain assets ("the 3.3 (d)(i) Assets") (Section 3.3 (d)(i)); (b) to pay additional stock consideration based on the

Company's post-closing performance; and (c) "to use reasonable [sic] commercial efforts to operate [Original NACSV] on a profitable basis and consistent [sic] with its historical practices" (Section 6.4). Defendants breached their obligations to pay the additional cash consideration ($406,000.00 is presently due Plaintiffs pursuant to Section 3.3 (d)(i), but Defendants GDSI and NACSV have disavowed that obligation and thus far refused to discharge it, despite having the funds to do so); to use commercially reasonable efforts to generate a profit (Defendants GDSI and NACSV have overspent funds in making a flashy video and purchasing an ocean-front condominium); and to operate the Company consistently with historical practices (Defendants GDSI and NACSV have changed the Company's longstanding practice of not requiring pre-payments/deposits for certain customers, resulting in cancelled or failed sales) and have forced out employees on whom the Company depends for profitability.

8. Further, to induce Plaintiffs to accept the issuance of GDSI stock as partial consideration for the sale, Defendants GDSI and Sullivan made false or misleading statements, or failed to state facts necessary to make their statements not misleading, with the intent to deceive Plaintiffs, causing them financial harm. At the time of the closing, the GDSI stock was trading for $0.35 per share, but now, just over twelve (12) months later, the stock price has fallen to $0.05 per share (a decline of almost 90%), the reasonable inference being that GDSI's and Sullivan's misleading, fraudulent or other wrongful statements have been discovered by the market. These actionable misrepresentations are more particularly set forth below.

## STATEMENT OF THE CLAIM

9. As set out in further detail below, Plaintiffs claim that (a) Defendants GDSI and NACSV breached their contractual obligations as aforesaid and (b) Defendants GDSI and Sullivan, by virtue of their material misrepresentations in connection with the issuance of GDSI stock to Plaintiffs, violated the

securities laws of the United States and the State of Alabama, respectively, the United States Securities Act of 1934 and *Code of Alabama* Section 8-6-19 (1975).

## FACTUAL ALLEGATIONS MATERIAL TO ALL COUNTS

10. Plaintiffs were the founders and only members of the Original NACSV. Original NACSV was in the business of designing and producing custom mobile command centers. Customers were principally law enforcement and military agencies. Plaintiff Dekle was the manager of the business and discharged those duties occasionally from the company's plant in Melbourne, Florida, occasionally from his home in Baldwin County, Alabama, and occasionally traveling throughout the United States and other countries to market, deliver, train, etc. in connection with mobile command centers. Since his terminal pancreatic cancer diagnosis in July of 2013, Plaintiff Dekle ran the business of the Original NACSV predominantly from Baldwin County, Alabama.

11. In 2014, GDSI and Sullivan became interested in purchasing Original NACSV. Plaintiff Dekle, due to his cancer battle, was often unable to travel and, therefore, negotiated with GDSI and Sullivan, via telephone and email, from Plaintiff's home in Baldwin County, Alabama.

12. Plaintiff Dekle, particularly given his health condition, wanted an all cash deal for the benefit of his family, but Defendants GDSI and Sullivan attempted to induce, and later succeeded in inducing, Plaintiffs to accept newly-issued GDSI stock as part consideration.

13. Beginning in April 2014 and continuing through the closing on June 16, 2014, Defendant Richard Sullivan, in his individual capacity and in his representative capacity for Defendant GDSI, methodically took advantage of Plaintiff Dekle's situation by continually deceiving Plaintiff Dekle about Defendant GDSI's ability and standing. While engaged in these misleading communications, Defendant Sullivan knew that his so-called business plan was nothing but smoke and mirrors.

14. In retrospect, Defendant Sullivan's scheme of deception and systematic defrauding of Plaintiffs are apparent. For example, Defendant Sullivan represented to Plaintiff Dekle that he had the connections, capital, and other pieces in place to build a turn key conglomerate military and law enforcement support business that would initially include Original NACSV, Lawmen's Safety Supply and Remington Outdoor Supply Company.[3]

15. Again in retrospect, Defendant Sullivan carefully carried out a name-dropping program to mislead Plaintiff Dekle into believing that Defendant GDSI was indeed morphing into this conglomerate. Prominent in this name-dropping was Massachusetts politician Scott Brown. Mr. Brown had been placed on GDSI's Advisory Board earlier in the year, and Defendant Sullivan touted that political connection in the earliest days of his courting of Plaintiff Dekle. However, in June 2014, media reports that highlighted Mr. Brown's becoming an Advisory Board Member in exchange for the issuance to him of $1.3m in GDSI stock prompted Mr. Brown to resign from the Board. The June 9, 2014 New Hampshire Democratic Newsletter opened as follows: This week, new disclosures about Scott Brown's $1.3 million advisory role with a shady beauty supply company turned arms manufacturer, raised serious questions about fraudulent behavior that could spark a securities investigation. *The Boston Globe* reported that accountants said that GDSI's "filings raise a number of warning signs for investors, including its varying business model and actual products". *The Huffington Post* opined that "[t]his company is a total sham, even within the league of penny stocks." *New England Cable News* described it this way: the scheme is where you sell stock in a company that doesn't do anything and the people who invested in it are left with nothing. . . . When Plaintiff's counsel asked Sullivan about Mr. Brown's resignation, Mr. Sullivan claimed that Mr. Brown was simply the target of a Democratic Party-leaning media.

---

[3]Even as of the date of the filing of this Second Amended Complaint, the opening statement of GDSI's website touts GDSI's "acquisition and integration strategy [as] the linchpin to [its] goal of becoming a leading provider of defense technology-based solutions and systems to commercial customers, the U.S. military and foreign allies, and U.S. government civil agencies and friendly counterparts."

16. The name-dropping continued to an extreme extent when Defendant Sullivan, Defendant GDSI's attorney,[4] and Edwin Wang[5] arranged a May 20, 2014, afternoon conference call, among Defendant Sullivan, said attorney, and Mr. Wang and Plaintiffs' counsel Richard E. Davis and CPA J. Kenny Crow, Jr. in which Mr. Wang and Defendant Sullivan privately announced an upcoming public announcement that GDSI was adding to its Board of Directors a prominent European citizen, whose pedigree, experience, standing in the arms community, and access to capital would enable GDSI to complete the purchase of Remington Outdoor Supply Company.[6] This representation was made by both Mr. Wang and Defendant Sullivan; it was material in its purpose and effect to induce the Plaintiffs into accepting stock rather than cash in the sale of the business, and it was false in that it was untrue and knowingly presented as fact in order to accomplish the said purpose. There is no other conceivable reason to make such private announcement to Plaintiffs other than to mislead Plaintiffs into this sale. Specifically, Messrs. Wang and Sullivan stated that the new board member was a descendant of King Leopold II, was an advisory board member of the European Commission on Cyber Security, and was a Minister of Defence: Karl-Theodor Maria Nikolaus Johann Jacob Philipp Franz Joseph Sylvester Freiherr von und zu Guttenberg. According to Messrs. Wang and Sullivan, the announcement of this Board membership was just days away, and they encouraged Plaintiffs' representatives to encourage Plaintiffs to take GDSI stock in lieu of cash in order to take advantage of the stock price bump that would immediately and inevitably follow the public announcement. However, no announcement was ever made, and the purported new board member never became a board

---

[4]Plaintiffs are unaware of any knowing participation by this attorney of his clients' misconduct, so his name is not included in this complaint. However, his name can be added if necessary for pleading requirement purposes.

[5]On information and belief, Mr. Wang is, or, at least at the time, was, a member of GDSI's Team of Senior Advisors, and was reputed to be an international financing expert.

[6]A fuller discussion of this sham transaction involving Remington appears below.

member. Upon reflection, this supposed addition to the Board was simply more name-dropping intended to dupe Plaintiffs into believing that GDSI stock would be adequate consideration for the sale of Original NACSV.

17. The pattern of deceit continued, or may have started with reference to GDSI's purported plan to buy Remington Outdoor Supply Company. As stated above, the addition to the Board of King Leopold's descendant was represented to be part of GDSI's plan to purchase Remington. However, recent Internet research reveals that Remington's CEO George Kollitides had declared GDSI's bid a "publicity stunt from an agenda-driven group with no credible financing options"[7]. Again, the noise about Remington was nothing more than "a resounding gong or a clanging cymbal" (1st Corinthians, Chapter 13, v 1), which 2000 years later, in this context, describes securities fraud.

18. Defendants GDSI's and Sullivan's "publicity stunts", name-dropping and general misleading ways led to a speciously valued stock, which collapsed when the market realized that GDSI's business plan was a sham.

19. Other representations made by Defendants GDSI and Sullivan that Plaintiffs have since learned to be false include the following:

(A) ***GDSI was buying Lawmen's Safety Supply of North Carolina***. This statement was made by Defendant Sullivan between May 2, 2014 and May 20, 2014. This statement was false and Defendant Sullivan knew it to be false when made. This statement was false in that Defendant Sullivan knew that GDSI did not have the financial ability to buy Lawmen's Safety Supply of North Carolina.

(B) ***GDSI would fund NACSV's production so that operating capital would be a non-issue***. This statement was made by Defendant Sullivan between May 2, 2014 and May 20, 2014. This statement was false and Defendant Sullivan knew it to be false when made. This statement was false in that Defendant Sullivan knew that GDSI did not have the financial ability to fund NACSV's production so that operating capital would be a non-issue.

---

[7] *See* thetruthaboutguns.com, March 12, 2014, *Remington: GDSI Bid is a 'Publicity Stunt'"*

(C) ***GDSI would fund NACSV's marketing.*** This statement was made by Defendant Sullivan between May 2, 2014 and May 20, 2014. This statement was false and Defendant Sullivan knew it to be false when made. This statement was false in that Defendant Sullivan misrepresented GDSI's ability to fund NACSV's marketing.

(D) ***GDSI would purchase a 56,000 square foot facility to enable NACSV to produce command centers at the volume that GDSI's marketing efforts would generate.*** This statement was made by Defendant Sullivan between May 2, 2014 and May 20, 2014. This statement was false and Defendant Sullivan knew it to be false when made. This statement was false in that GDSI did not intend in good faith to purchase a 56,000 square foot facility to enable NACSV to produce command centers at the volume that GDSI's marketing efforts would generate.

20. The representations identified in subparagraphs 19 (A) through (D) above were false and made with the intent to deceive Plaintiffs to induce them to accept stock as partial satisfaction of the purchase price, thereby reducing the value Plaintiffs received. At the time of the closing of the sale by Plaintiffs to GDSI Acquisition Corporation, Plaintiffs did not realize the fraudulent nature or falsity of these representations, and as a result, they accepted GDSI stock in reasonable reliance on these fraudulent statements. The misrepresentations caused the Plaintiffs to accept stock rather than cash as partial payment of the purchase price which caused the Plaintiffs' loss.

21. Plaintiffs would not have accepted stock as part consideration and would not have agreed to accept stock for post-closing consideration, but for the numerous misrepresentations made by Defendants Sullivan and GDSI throughout the pre-closing discussions.

22. On or about June 16, 2014, Plaintiffs met in Daphne, Alabama, and executed the Purchase Agreement, pursuant to which Plaintiffs sold their interests in Original NACSV to Defendant GDSI Acquisition Corporation (now known as Defendant NACSV). Defendant NACSV and Original NACSV guaranteed the performance of Defendant NACSV under the Purchase Agreement. Defendants delivered the executed Purchase Agreement and the initial GDSI stock certificates to Plaintiffs in Alabama; therefore, the final action necessary to complete the closing occurred in Alabama.

23. The Purchase Agreement required Defendant GDSI and Original NACSV, among other things, (a) to pay additional cash consideration upon the post-closing sale of certain assets ("3.3 (d)(i)

Assets") (Section 3.3 (d)(i)); (b) to pay additional stock consideration based on the Company's post-closing performance; and (c) "to use reasonable [sic] commercial efforts to operate [Original NACSV] on a profitable basis and consistent [sic] with its historical practices" (Section 6.4).

24. After the closing, Plaintiff Dekle remained a very active employee of the Company, assisting with the post-closing transition, contacting customers, assisting with sales, and consulting on operations. Almost all of these activities were carried out from his home in Baldwin County, Alabama. On December 3, 2014, GDSI changed Plaintiff Dekle's title to Non-Executive Chairman of the Board, and he continued to carry on as before, almost always from Baldwin County, Alabama. Due to these activities and Plaintiff Dekle's responsibilities, the Company, through the efforts of Plaintiff Dekle, was regularly conducting business from within the State of Alabama.

25. The Purchase Agreement required, among other things, a post-closing accounting adjustment of balance sheet items. All of the parties looked to Baldwin County/Mobile County, Alabama, accountant J. Kenny Crow, Jr., to calculate the adjustment amount, and all of the parties relied on said adjustment amount as calculated and released by Mr. Crow from one of his Alabama offices.

26. Some of the 3.3 (d)(i) Assets were sold to Communication Laboratories, Inc. for $200,000.00 and $100,000.00, and some were sold to Potter County, Pennsylvania, for $162,000.00 (of which $106,000.00 belonged to Plaintiffs). Plaintiffs owned perfected UCC security interests in said Assets, and the Purchase Agreement required Defendants to remit the proceeds of the sales of those Assets to Plaintiffs within thirty (30) days after receipt of the purchase price, less any applicable sales tax.

27. By the time the sales of the 3.3 (d)(i) Assets were made, Defendants had breached their obligations to use commercially reasonable efforts to generate a profit as they overspent in making a flashy video and purchasing an ocean-front condominium. Defendants also breached their obligations to operate the Company consistently with historical practices, as they changed the Company's longstanding practice

of not requiring pre-payments/deposits for certain customers, resulting in cancelled or failed sales. Further, by the time those sales were made, Plaintiffs had seen their stock value decline dramatically from $0.35 per share to $0.04 per share and otherwise realized that they had been defrauded into accepting stock in a failing business.

28. The proceeds of the sale of the 3.3 (d)(i) to Communication Laboratories, in the amount of $300,000.00, were delivered to Plaintiff Dekle in Baldwin County, Alabama. He offered to overnight these funds, despite his security interest therein, to Defendants on the condition that the same would be deposited and returned to Plaintiffs. However, Defendants declined that offer and instead repudiated their obligation to remit those funds (as well as the $106,000 from Potter County) in accordance with the contractually-required schedule. Therefore, Plaintiffs turned the $300,000.00 in checks over to their [undersigned] Alabama counsel, who continues to hold them.

29. Defendants have systematically alienated customers, vendors, and employees and have substantially and irreparably damaged the goodwill of the business, causing a substantial devaluation both of the business and Plaintiffs' shares of stock in GDSI and impairing the prospects of Plaintiffs' earning any further Post-Closing Additional Consideration.

30. Defendants also ran off Wally Bailey, a key longtime employee of the Company, assuring that the Company would suffer very difficult times trying to transition to new ownership.

## COUNT ONE

## SPECIFIC PERFORMANCE

31. Plaintiffs hereby incorporate the allegations set forth contained in all of the preceding paragraphs.

WHEREFORE, Plaintiffs respectfully request an order finding that the proceeds of the sales of the 3.3 (d)(i) Assets rightfully belong to the Plaintiffs and directing Defendants to instruct Communications Laboratories, Inc. to reissue the said $300,000.00 in checks to Plaintiffs to discharge, in part, Defendants' obligations to Plaintiffs under the Purchase Agreement.

## COUNT TWO

## BREACH OF CONTRACT - MONEY DAMAGES

32. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 30.

33. Defendants GDSI and NACSV have materially breached the Purchase Agreement, and as a proximate consequence of said breach, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment for compensatory damages against Defendants NACSV and GDSI, jointly and severally, plus interest and costs.

## COUNT THREE

## Violation of Rule 10b5

34. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 21.

35. The actions of Defendants GDSI and Sullivan violate the United States Securities Act of 1934, including SEC Rule 10b5 promulgated pursuant to the Act.

36. Defendants GDSI and Sullivan made the false and misleading statements to Plaintiffs set out above, in connection with the sale by Defendant GDSI to Plaintiffs of the GDSI stock, with the intent to deceive, manipulate or defraud, and Plaintiffs reasonably relied on said false and misleading statements and suffered damages as a result.

WHEREFORE, Plaintiffs demand judgment against Defendants GDSI and Sullivan, jointly and severally, plus interest and costs.

**COUNT FOUR**

**VIOLATION OF THE ALABAMA SECURITIES ACT**

37. Plaintiffs hereby incorporate the allegations set forth contained in paragraphs 1 - 21.

38. Defendants GDSI and Sullivan's actions as set out above violated Ala. Code § 8-6-17 in connection with the offering of and a sale of securities in Alabama, with said sale being consummated in Alabama.

39. As a result of Defendants GDSI and Sullivan's violation of *Ala. Code* Section 8-6-17, Plaintiffs are entitled to the relief set out in § 8-6-19, namely: "to recover the consideration paid for the security [GDSI stock], together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees."

WHEREFORE the premises considered, Plaintiffs demand judgment against Defendants, GDSI, and Sullivan, jointly and severally.

DATED June 15, 2015.

Respectfully submitted,

*/s/ Richard E. Davis*
RICHARD E. DAVIS (DAV046)

Of Counsel:
DAVIS & FIELDS, P.C.
Post Office Box 2925
Daphne, Alabama 36526
(251) 621-1555; (251) 621-1520, fax
rdavis@davis-fields.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of the filing to all parties and/or counsel of record.

*s/ Richard E. Davis*
**RICHARD E. DAVIS**

52863.wpd